# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                              |     |                            |
|------------------------------|-----|----------------------------|
|                              | *   |                            |
| **VIRGINIA BARNES, et al.,** | *   |                            |
| **Plaintiffs,**              | *   |                            |
| **v.**                       | *   | **Case No.: BPG-10-2492**  |
| **ISG SPARROWS POINT, LLC,** | *   |                            |
| **Defendant.**               | *   |                            |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4.  (ECF No. 16.) Currently pending are defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment,[1] plaintiff's opposition, and defendant's reply.  (ECF Nos. 50, 53, 61.)  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, defendant's motion (ECF No. 50) is GRANTED.

## I.  BACKGROUND

Plaintiff Eugene Barnes ("plaintiff"),[2] a 60-year old African-American male, was

---

[1] Defendant's motion is based on Federal Rules of Civil Procedure 12(b)(6) and 56.  (ECF No. 50-2 at 6-7.)  Because the parties rely on matters outside the pleadings, the motion will be treated as one for summary judgment under Rule 56.  See Walker v. True, 399 F.3d 315, 319 n.2 (4th Cir. 2005).

[2] On September 14, 2011, the court granted the motion of Virginia Barnes and Tiffany Barnes to be substituted as plaintiffs in this matter, as plaintiff Eugene Barnes passed away on July 25, 2011.  (ECF No. 67.)  For ease of reference, the court will refer to Mr. Barnes as "plaintiff" in its discussion of this case.

employed by defendant ISG Sparrows Point, LLC[3] ("defendant" or "Severstal") for 39 years. (Am. Compl., ECF No. 5 ¶ 1.)  On September 12, 2007, plaintiff was suspended from his job after he tested positive for the presence of alcohol in his system during the workday.  (Def.'s Mem., ECF No. 50-2 at 2, Ex. 4.)  After a union grievance was filed on his behalf, defendant issued plaintiff a "last chance agreement" on October 22, 2007, advising that he would be subject to random screenings for five months and that any subsequent positive test would result in suspension with intent to discharge.  (Id. at 2-3, Ex. 5.)  Plaintiff signed this agreement, stating that he understood and accepted its terms, on October 26, 2007.  (Id.)

Plaintiff again tested positive for the presence of alcohol in his system during a random screening on March 13, 2008, and was suspended with intent to discharge by a letter dated March 24, 2008.  (Id. at 3, Ex. 6.)  A "Step I" union grievance filed on his behalf was denied by defendant on June 4, 2008, and plaintiff was terminated effective June 15, 2008.  (Id., Ex. 7.)  A "Step II" union grievance requesting reinstatement was denied on June 25, 2008.  (ECF No. 53, Ex. 6 at 5-6.)  Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") on April 13, 2009.  (ECF No. 50, Ex. 10.)  Plaintiff filed the instant action in the Circuit Court for Baltimore City on June 10, 2010.  (Id., Ex. 11.)  Plaintiff filed an Amended Complaint on August 10, 2010, and defendant timely removed to this court.  (ECF No. 1.)

Count I of plaintiff's Amended Complaint alleges race, sex, and age discrimination in violation of Title 20, Subtitle 6 of the Maryland State Government Article, Md. Code. Ann.,

---

[3] ISG Sparrows Point was acquired by OAO Severstal in March 2008 and is now named Severstal Sparrows Point.  In its motion, defendant is identified as Severstal, not ISG Sparrows Point.

State Gov't § 20-601, et. seq.[4] (Id.) Specifically, plaintiff alleges that defendant violated Title 20 because "white and younger employees who tested positive for drugs and alcohol abuse on the job and who had been warned on prior occasions were treated different [sic] than the plaintiff because they were not terminated and if they were terminated they were reinstated." (Id., ¶ 8.) In Count II of his Amended Complaint, plaintiff claims that he was terminated "because of his race," in violation of 42 U.S.C. § 1981. (Id., ¶ 6.)

## II. **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5] A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The only facts that are properly considered "material" are those that might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

When considering a motion for summary judgment, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however,

---

[4] Title 20 of the Maryland State Government Article is essentially the state law analog to Title VII. Haas v. Lockheed Martin Corp., 396 Md. 469, 483 n.8, 914 A.2d 735 (2007). "Maryland courts routinely look to Title VII cases to determine the scope of liability under Title 20." Bishop v. Bd. of Educ. of Calvert Co., 2011 WL 2651246, at *9 (D. Md. July 5, 2011) (internal citations omitted).

[5] Effective December 1, 2010, Federal Rule of Civil Procedure 56 was "revised to improve the procedures for presenting and deciding summary judgment motions" to make them "more consistent with those already used in many courts." Fed. R. Civ. P. 56 advisory committee's note. The summary judgment standard, however, "remains unchanged." Id.

may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  On those issues for which the non-moving party will have the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule.  Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex, 477 U.S. at 322-23.

## III. DISCUSSION

### A.  Timeliness of EEOC Charge

Defendant argues that plaintiff's claim under Title 20 of the Maryland State Government Article law should be dismissed because he failed to file a timely administrative charge with the EEOC.  (ECF No. 50-2 at 9-10.)  A plaintiff may only bring suit under Title 20 if he or she timely filed an administrative charge under federal, State, or local law and at least 180 days have elapsed since the administrative charge was filed.  Md. Code Ann., State Gov't § 20-1013(a)(1)-(2).  Because Maryland is a "deferral state," meaning it has a state agency with enforcement powers parallel to those of the EEOC, an administrative charge is timely if filed within 300 days of the occurrence of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1);[6] see Francis v. Bd. of Sch. Comm'rs, 32 F. Supp. 2d 316, 321 (D. Md. 1999) ("A charge is deemed timely if it is sent to the EEOC within 300 days after the alleged unlawful practice.").

---

[6] "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . [unless] the person aggrieved has initially instituted proceedings with a State or local agency, . . . [then] such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. 2000e-5(e)(1).

Defendant argues that the time for filing an EEOC charge begins to run on the date the employee receives notice of the adverse employment action, applying Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980) and Chardon v. Fernandez, 454 U.S. 6, 8 (1981). (ECF No. 50-2 at 9-10.) In Ricks, the Supreme Court held that the limitations period for filing an administrative complaint with the EEOC accrued when a professor was denied tenure, rather than when his one-year terminal contract expired, because termination was a "delayed, but inevitable consequence of the denial of tenure." 449 U.S. at 257-58 (noting that Ricks received "explicit notice that his employment would end" after the one-year period expired). After reviewing the allegations in Ricks' complaint, the Court reasoned that "the only alleged discrimination occurred—and the filing of the limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks." Id. at 258. The Court further stated that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." 449 U.S. at 261 (citing Elec. Workers v. Robbins & Myers, Inc., 429 U.S. 229 (1976)).

In Chardon, the Court extended its holding in Ricks to a wrongful termination action under § 1983. 454 U.S. 6, 8 (1981). The Court held that the limitations period commenced when the nontenured administrators received notice that their employment would be terminated, reiterating that "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Id.

Defendant asserts that plaintiff was notified of his termination on June 4, 2008, after a "Step I" union grievance on his behalf was denied. (ECF No. 50, Ex. 7, Step I Company Record dated 06/04/08 ("The Company is discharging Mr. Barnes effective 6/15/08.").) Accordingly, since plaintiff was notified of his termination on June 4, 2008, and his administrative charge was

not filed until 313 days later on April 13, 2009, defendant contends that plaintiff's Title 20 claim is time-barred.  (Id. at 10.)  Even applying the date of plaintiff's termination, June 15, 2008, defendant argues the result is the same, as 302 days elapsed between June 15, 2008 and April 13, 2009.  (ECF 50-2 at 10 n.8.)

Plaintiff does not dispute defendant's assertion that he received notice of his termination on June 4, 2008.  Rather, plaintiff argues that the operative date for assessing the timeliness of his administrative charge is June 25, 2008, the date on which his union grievance requesting reinstatement was denied.[7]  (ECF No. 53 at 38-42.)  Plaintiff asserts that he "would not have been able to make a claim of disparate treatment for failure to reinstate until he was denied reinstatement on 6/25/08."  (Id. at 41.)  Plaintiff also cites Ricks / Chardon but provides no explanation or analysis as to how these cases support his position.  (Id.)

The Ricks Court cautioned that "[c]omplaints that employment termination resulted from discrimination present widely varying circumstances" and, accordingly, "the application of the general principles discussed herein necessarily must be made on a case-by-case basis."  449 U.S. at 258 n.9.  The Court made clear that there, the denial of tenure was the only discriminatory act alleged in the complaint.  Id. at 258.  The Court further stated that in order for the limitations period to accrue on the date Ricks' contract expired, "Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure."  Id.

Applying these principles, the focus must be on the discriminatory act alleged.  Here, plaintiff claims that the discriminatory act was defendant's refusal to reinstate him on June 25,

---

[7] In support of his argument, plaintiff points to a record of his "Step II" union grievance proceeding, held on June 12, 2008 and approved on June 25, 2008, in which his request for reinstatement was denied.  (ECF No. 53, Ex. 6 at 4-5.)

2008, which is less than 300 days from the date plaintiff's EEOC charge was filed—April 13, 2009.  Accordingly, the court finds that plaintiff's EEOC charge was timely filed and defendant's argument must fail.

**B.  Statute of Limitations**

Under Title 20 of the Maryland State Government Article, a civil action is timely if "filed within 2 years after the alleged discrimination occurred."  Md. Code Ann., State Gov't § 20-1013(a).  Defendant argues that the statute of limitations began to accrue when plaintiff was notified of his termination on June 4, 2008.  (ECF No. 50-2 at 10.)  Since the case was not filed until June 10, 2010, defendant argues plaintiff's claim is time-barred.  (Id. at 10-11.)  Plaintiff argues that the denial of reinstatement on June 25, 2008 is the operative date and, accordingly, his Title 20 claim is timely.  (ECF No. 53 at 39.)

While Maryland courts often look to federal case law in interpreting Title 20, Maryland has expressly rejected the Ricks / Chardon "notice of discharge" rule and held that the limitations period commences on the date of the actual termination.  Haas v. Lockheed Martin Corp., 396 Md. 469, 494, 914 A.2d 735, 750 (2007).[8]  The Haas court reasoned that focusing on when the employee is actually discharged, rather than when the employee is notified of such an impending action, better serves the remedial purpose of Maryland's anti-discrimination statute by facilitating conciliation between the aggrieved employee and the employer, avoiding the filing of stale or unripe claims, and simplifying the resolution of limitations issues.  Id. at 494-98, 750-52.  Accordingly, the date plaintiff was notified of his termination, June 4, 2008, is not the operative

---

[8] The plaintiff in Haas' suit was brought under Article 49B of the Code of Maryland, which has since been recodified as Title 20 of the State Government Article.

date for calculating limitations under Maryland law,[9] and plaintiff's Title 20 claim is not barred by the statute of limitations.

### C. Administrative Exhaustion of Sex Discrimination Claim

Defendant next argues that plaintiff's sex discrimination claim was not included in his original EEOC charge and is thus now barred, citing Killian v. Kinzer, 123 Md. App. 60, 716 A.2d 1071 (1998) (employee who checked retaliation box on EEOC charge could not pursue Title VII sexual harassment claim where charges are not sufficiently interrelated) and Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) ("[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex.").[10] (ECF No. 50-2 at 11.)

In opposition, plaintiff does not dispute that the EEOC charge only mentioned race and age discrimination, but argues that he "may bring a claim that is stated in the charge itself or developed in the course of a reasonable investigation of that charge," citing EEOC v. Gen. Elec., 532 F.2d 359, 365 (4th Cir. 1976). (ECF No. 53 at 43.) Plaintiff argues that two of the alleged comparators are Caucasian females, and a reasonable investigation undertaken by the EEOC or the Maryland Commission on Human Relations ("MCHR") would have uncovered disparate treatment of plaintiff based on sex. (Id. at 44 (citing Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981) ("[T]he scope of the civil action is confined only by the scope of the

---

[9] Applying either the effective date of plaintiffs' termination, June 15, 2008, or the date plaintiff was denied reinstatement, June 25, 2008, plaintiffs' claim is timely under Maryland's two-year statute of limitations.

[10] The administrative exhaustion requirements in Title 20 mirror those under Title VII. See Cuffee v. Verizon Commc'ns, Inc., 755 F. Supp. 2d 672, 678 (D. Md. 2010) ("[L]ike Title VII, [Title 20] does require that would-be plaintiffs first file a charge of discrimination with an enforcement agency.").

administrative investigation that can reasonably be expected to follow the charge of discrimination."))  Plaintiff also asserts that EEOC charges are completed by lay persons and thus should be construed liberally by courts.  (Id. (citing Alvarado v. Bd. of Trs. of Montgomery Co. Coll., 848 F.2d 457, 460 (4th Cir. 1988)).)

In reply, defendant argues that General Electric is inapposite, as plaintiff's sex discrimination claim was not developed in the course of a reasonable investigation, no investigative findings were issued by the EEOC or MCHR, nor was sex discrimination ever "included in any reasonable cause determination or made part of any conciliation procedures." (ECF No. 61-1 at 7 (quoting Gen. Elec., 532 F.2d at 366 ("[T]he original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.")).)

It is well-established in the Fourth Circuit that in employment discrimination matters in which a lawsuit follows a charge of discrimination filed with the EEOC, "[t]he suit filed may encompass only the discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge."  King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976) (internal citation and quotations omitted); see also Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) ("[T]he plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex."). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Evans v. Techs.

Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).

It should be noted that it is difficult to evaluate this issue without the benefit of plaintiff's actual EEOC charge, which was not submitted in support of either party's motion. Defendant's motion includes a copy of a "Notice of Charge of Discrimination," in which it was noted that the EEOC received documentation on April 13, 2009 "constituting a minimally sufficient charge of discrimination." (ECF No. 50, Ex. 10.) The boxes for race and age discrimination, but not sex discrimination, were checked off on the form. (Id.) The notice stated that a "perfected charge" would be forwarded to defendant within 45-60 days. (Id.)

Plaintiff has not presented any evidence that sex discrimination was mentioned in his administrative charge or uncovered during the course of an investigation by the EEOC or MCHR. See Karim v. Staples, Inc., 210 F. Supp. 2d 737 (D. Md. 2002) (employee failed to exhaust administrative remedies as to race and religious discrimination claims, as administrative complaint and investigative findings only mentioned national origin and color discrimination); Stehle v. Gen. Mills Rest., Inc., 875 F. Supp. 320 (D.S.C. 1994) (employee could not maintain sex discrimination claim where EEOC charge only contained race claim and no evidence presented that EEOC investigation found sex discrimination).

Nor has plaintiff offered any evidence to support a conclusion that one could reasonably expect an investigation of plaintiff's race and age discrimination claims to uncover evidence of sex discrimination. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002) ("Administrative investigation of . . . color and sex discrimination . . . could not reasonably be expected to occur in light of Bryant's sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination."); Bryan v. Prince Georges Co., 2011 WL 2650759, at *4 (D. Md. July 5, 2011) (employee failed to exhaust

administrative remedies where charge made no mention of race discrimination, "[n]or would it be reasonable to expect an investigation of his national origin claim to uncover evidence concerning his separate, race-based claims"); Cole v. Hillside Family of Agencies, Inc., 2011 WL 2413928, at *4 (D. Md. June 9, 2011) ("Because Cole's administrative charge alleged discrimination on the basis of sex and retaliation alone, and given that there is no indication that the HRD in any way expanded its investigation to include allegations of race discrimination, Cole's Title VII race discrimination claim is barred for failure to exhaust administrative remedies.").

In sum, as plaintiff's sex discrimination claim is outside the scope of his administrative charge, the court finds that this claim is procedurally barred. Accordingly, only plaintiff's age and race discrimination claims under Title 20 will be reviewed on the merits.

**D. Discrimination Claims Under Title 20 and 42 U.S.C. § 1981**

Plaintiff alleges discrimination in violation of Title 20 of the Maryland State Government Article and 42 U.S.C. § 1981. (Am. Compl., ECF No. 2.) Title 20 of the Maryland State Government Article, Maryland's anti-discrimination statute, is essentially the state law analog to Title VII. Haas v. Lockheed Martin Corp., 396 Md. 469, 483 n.8, 914 A.2d 735 (2007). Maryland courts generally look Title VII cases in interpreting discrimination claims under Title 20. Bishop v. Bd. of Educ. of Calvert Co., 2011 WL 2651246, at *9 (D. Md. July 5, 2011) (internal citations omitted). Title 42 U.S.C. § 1981 prohibits discrimination on the basis of race in the making and enforcement of contracts. 42 U.S.C. § 1981. This provision has been interpreted to provide a federal remedy for racial discrimination in employment. See Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018 (4th Cir. 1999). Race discrimination claims under § 1981 are analyzed under the same burden-shifting framework and require proof of the same

elements as claims under Title VII. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); Gairola v. Virginia, 753 F.2d 1281, 1285 (4th Cir. 1985). Accordingly, the analysis of plaintiff's race discrimination claim under § 1981 will also apply to plaintiff's surviving race and age discrimination claims under Title 20.

    1. Prima Facie Case

As a preliminary matter, the parties do not agree on which legal standard applies to plaintiff's § 1981 claim. Defendant advances the standard for establishing a prima facie case of wrongful termination under § 1981, which requires proof that "(1) [plaintiff] is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees outside the protected class were retained under apparently similar circumstances." (ECF No. 50-2 at 12-13 (quoting Honor v. Booz Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004) (citing Bryant v. Bell Atl. Md, Inc., 288 F.3d 124, 133 (4th Cir. 2002))).)

Plaintiff, on the other hand, advances the standard for asserting a prima facie case of disparate discipline, which requires a showing that (1) plaintiff is a member of a protected class; (2) his misconduct was of comparable seriousness to that of employees outside the protected class; and (3) the discipline imposed on the plaintiff was more severe than that imposed on the similarly situated employees. (ECF No. 53 at 7 (citing Cook v. CSX Trans. Corp., 988 F.2d 507, 511 (4th Cir. 1993)).)

These standards do not differ materially for purposes of resolving plaintiff's claim, as both require analysis of whether plaintiff was treated less favorably than comparable employees outside his protected class, raising an inference of discriminatory intent.[11] Furthermore, while

---

[11] The parties do not dispute that plaintiff is a member of a protected class.

the allegations in plaintiff's Amended Complaint focus heavily on his termination, construing the Complaint liberally and viewing all facts and inferences in plaintiff's favor, plaintiff has arguably advanced a claim of disparate discipline. (See ECF No. 2 ¶ 8 ("White . . . employees who tested positive for drugs and alcohol abuse on the job and who had been warned on prior occasions were treated different [sic] than the plaintiff because they were not terminated and if they were terminated they were reinstated.").)

Defendant argues that plaintiff cannot show that similarly situated employees outside the protected class were retained under similar circumstances, discussing each of plaintiff's four identified comparators. (ECF No. 50-2 at 13-15.) In opposition, plaintiff argues that his comparators "were granted reinstatement even after violation of defendant's last clear chance letters, its progressive disciplinary procedure and its policy on alcohol and drug abuse" and discusses each employee's disciplinary record. (ECF No. 53 at 15.)

In determining whether a plaintiff's misconduct is comparable in seriousness to that of employees outside the protected class, the Fourth Circuit has instructed that a court should consider "the gravity of the offenses on a relative scale," comparing "the harm caused or threatened to the victim or society, and the culpability of the offender." Moore v. City of Charlotte, 745 F.2d 1100, 1107 (4th Cir. 1985) (quoting Solem v. Helm, 463 U.S. 277 (1983)). Exact similarity between the compared offenses is not required. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993) ("[T]he comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances."). Nonetheless, "[t]he similarity between comparators and the seriousness of their respective offenses, must be clearly established in order to be meaningful." Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008).

The first of plaintiff's comparators, Stacey Culotta, is a Caucasian, 31-year-old employee who has had numerous disciplinary infractions throughout the duration of her employment. Ms. Culotta's personnel records reveal that she received written warnings, two one-day suspensions, and a three-day suspension for issues such as leaving her work area without permission, carelessness, tardiness, and violations of the early quit policy. (ECF No. 53, Ex. 2.) On July 19, 2010, Ms. Culotta was suspended with intent to discharge for being unfit to work after she failed a drug and alcohol screening on July 14, 2010. (Id.) A union grievance was filed on Ms. Culotta's behalf, which was still pending as of defendant's reply brief dated June 17, 2011. (ECF No. 61-1 at 3.)

Defendant argues that Ms. Culotta is not an appropriate comparator because no decision has yet been made as to whether she will be terminated. (ECF No. 50-2 at 13 (citing Dolan Dep.,[12] Ex. 8, at 42, 99).) Defendant further asserts that Ms. Culotta "was subjected to the exact same disciplinary process as [plaintiff]" because she was suspended with intent to discharge for failing a drug and alcohol screening. (ECF No. 61-1 at 3.)

Plaintiff argues that defendant has been more lenient in administering its progressive disciplinary policy with respect to Ms. Culotta's prior infractions.[13] (ECF No. 53 at 16, 22, 25.) Mr. Dolan does state in his deposition that, with respect to Ms. Culotta's attendance and carelessness problems, "they were lenient with her for some reason," i.e., by treating them as

[12] Craig Dolan is employed by defendant as a Labor Relations Representative. (ECF No. 50, Ex. 8, at 5-7.)

[13] Mr. Dolan explained in his deposition that, when an employee is disciplined for certain workplace infractions, the progressive disciplinary policy applies and the employee first receives a written warning, followed by a one-day penalty, then a three-day penalty, then a five-day penalty, and finally, suspension with discharge. (ECF No. 50, Ex. 8 at 60.) For more serious infractions, including fighting, flagrant safety violations, bringing a weapon to work, or being unfit to work, the progressive discipline policy does not apply, and the employee is immediately suspended with intent to discharge. (Id. at 54-55.)

separate events for purposes of applying progressive discipline.  (ECF No. 50 Ex. 8 at 58.)

As defendant points out in reply, however, the infractions for which the progressive disciplinary policy was applied (e.g., Ms. Culotta's penalties for attendance and carelessness) were not comparable in seriousness to a drug and alcohol violation.  (ECF No. 61-1 at 3.)  With respect to Ms. Culotta's violation of the drug and alcohol policy, defendant asserts that Ms. Culotta was treated exactly the same as plaintiff, as both employees were immediately suspended with intent to discharge upon being deemed unfit to work.  (Id.)

Workplace infractions for carelessness and attendance problems are not comparable in seriousness to a violation of an employer's drug and alcohol policy, which presents a more significant risk of harm.  As Ms. Culotta is currently suspended with intent to discharge for violating defendant's drug and alcohol policy, plaintiff has failed to demonstrate that Ms. Culotta was disciplined less severely than plaintiff for comparable misconduct.  Accordingly, plaintiff cannot maintain a claim of race and age discrimination using Ms. Culotta as a comparator.

The next comparator is Joseph DiGiovine, a Caucasian, 54-year-old employee. Defendant argues that Mr. DiGiovine is not an appropriate comparator, as he "was disciplined and issued 'last chance agreements' for the use of foul language, operating a piece of equipment in a careless manner, and for missing an extended period of time for work."  (ECF No. 50-2 at 14.)  Further, defendant asserts that Mr. DiGiovine was terminated for lying to defendant about his reason for missing work for an extended period.  (Id.)

In opposition, plaintiff argues that Mr. DiGiovine was given four "last chance" letters for comparable infractions, but plaintiff only received one.  (ECF No. 53 at 35.)  In reply, defendant asserts that that Mr. DiGiovine's disciplinary issues did not involve alcohol or drugs, and thus did not present the same safety risks and concerns as plaintiff's violation.  (ECF No. 61-1 at 3-4.)

Defendant further asserts that Mr. DiGiovine's "last chance" letters relate to "separate and distinct disciplinary issues," consistent with Severstal's policy, and he did not receive multiple last chance letters for the same infraction.  (Id. at 4.)  The court finds that Mr. DiGiovine's misconduct was not comparable in seriousness to plaintiff's violation of defendant's drug and alcohol policy.  See Smith v. Berry Co., 165 F.3d 390, 396 (5th Cir. 1999) (defendant had legitimate nondiscriminatory reasons to treat plaintiff, employee with alcohol problems, differently from employee disrupting workplace through negative attitude).  Accordingly, plaintiff cannot maintain a claim of race discrimination using Mr. DiGiovine as a comparator.

Defendant argues that plaintiff and another comparator, Alan Norfolk, a Caucasian, 60-year-old employee, are not similarly situated because Mr. Norfolk was suspended with intent to discharge in May 2003 and returned to work pursuant to a "last chance agreement," but "[t]here is no evidence that Mr. Norfolk failed a subsequent alcohol test and was retained despite that test."  (ECF No. 50-2 at 15 (citing Ex. 14).)  In opposition, plaintiff argues that "defendant ignores the fact that it required random drug screening tests for a five-year period and none was [sic] done," defendant failed to discipline Mr. Norfolk for refusing a medical exam, and failed to produce documents demonstrating Mr. Norfolk attended required NA and AA meetings.  (ECF No. 53 at 32.)

It is plaintiff's burden to come forward with evidence showing that Mr. Norfolk was disciplined less severely than plaintiff for comparable misconduct, and no such evidence has been presented here.  Mr. Norfolk's personnel file includes reports of three negative alcohol drug screening tests following his conditional reinstatement—one from 4/18/07, one from 3/23/10, and one from 3/23/11.  (Id., Ex. 7.)  The medical exam Mr. Norfolk refused on June 11, 2010, was offered by virtue of the health consequences associated with Mr. Norfolk's job exposure;

there is no evidence that the exam itself or Mr. Norfolk's refusal had anything to do with alcohol or drugs. (Id.) In short, in the absence of any evidence that Mr. Norfolk failed a drug or alcohol test subsequent to his "last chance agreement" and was nonetheless retained, plaintiff has failed to show that Mr. Norfolk is similarly situated. Accordingly, plaintiff cannot maintain a prima facie case of discrimination using Mr. Norfolk as a comparator.

Plaintiff's final comparator, Renae Stankiwicz, is a Caucasian employee.[14] Defendant argues that Ms. Stankiwicz is not similarly situated, as "Ms. Stankiwicz's grievance was taken to Step 3 of the grievance process and the Union specifically negotiated for her return to work as a part of collective bargaining." (ECF No. 50-2 at 14 (citing Dolan Dep., Ex. 8 at 86, 87, 89).) Defendant further notes that Ms. Stankiwicz's positive tests and retention occurred two years after plaintiff was terminated, and the focus should be on the employer's alleged discriminatory animus at the time of plaintiff's adverse employment action, but does not cite any authority for this proposition. (Id. n.9.) But cf. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993) ("[T]he comparison [between employees in disparate discipline cases] will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances.") (internal citation omitted); Lauture v. St. Agnes Hosp., 2011 WL 1881969, at *4 (4th Cir. May 18, 2011) (declining to adopt plaintiff's "fixed evidentiary end date" in reviewing comparator evidence in disparate discipline case). Plaintiff responds that Ms. Stankiwicz was reinstated after failing two drug and alcohol screening tests—one following a last chance agreement—and thus has a comparable disciplinary record but was treated more favorably than plaintiff. (ECF No. 53 at 27.)

_____

[14] Ms. Stankiwicz's age is not clear from the personnel records submitted in support of plaintiffs' opposition.

Plaintiff has introduced evidence demonstrating that Ms. Stankiwicz, like plaintiff, failed a drug and alcohol screening test in violation of company policy but unlike plaintiff, Ms. Stankiwicz was later reinstated. Defendant notes that an African-American employee, Dallas Robinson, was issued a "last chance agreement" for violating defendant's drug and alcohol policy and was also reinstated as part of the same union negotiations as Ms. Stankiwicz. (ECF No. 50-2, Ex. 8, at 87.) At this stage of the case, however, the court must view the facts and reasonable inferences in the light most favorable to the plaintiff. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal citation omitted). Accordingly, the court finds that plaintiff has established the bare minimum in terms of a prima facie case using Ms. Stankiwicz as a comparator.

2. Legitimate, Nondiscriminatory Reason

If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer, who must come forward with a legitimate, nondiscriminatory explanation for the termination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). If such a reason is proffered, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the apparently valid reason was actually a pretext for illegal discrimination. Id. at 143. The ultimate burden of persuading the fact finder that the employer intentionally discriminated against the plaintiff "remains at all times with the plaintiff." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Although plaintiff has established a prima facie case using Ms. Stankiwicz as a comparator, defendant has produced admissible evidence to show that it had a legitimate,

nondiscriminatory reason for terminating plaintiff. (ECF No. 50-2 at 15.) See Reeves, 530 U.S. at 142 (employer's burden at this stage is one of production, not persuasion; it can involve no credibility assessment"). Plaintiff twice violated the company's drug and alcohol policy, which plaintiff admitted he was aware of, even after plaintiff signed a "last chance agreement" acknowledging that any future violation would result in immediate suspension with intent to discharge. (Id. (citing Exs. 3, 5).) Accordingly, defendant has met its burden of production by offering admissible evidence sufficient for the trier of fact to conclude that plaintiff was fired because of his violations of the company's drug and alcohol policy. Id.

      3.  Pretext

If the employer produces a legitimate, nondiscriminatory explanation for plaintiff's termination, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the proffered explanation was false, or a pretext for unlawful discrimination. See Reeves, 530 U.S. at 143, 148 ("A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). Plaintiff has offered no such evidence in this case. In the section of his memorandum discussing pretext, plaintiff merely restates his argument that other employees who engaged in comparable misconduct were reinstated, while plaintiff was denied reinstatement. (ECF No. 53 at 37-38.) As discussed above, however, plaintiff has only established a prima facie case as to one comparator, Renae Stankiwicz, and defendant has advanced evidence that the decision to retain Ms. Stankiwicz was made based upon labor negotiations in which the union actively bargained for Ms. Stankiwicz's retention. (ECF No. 50-2 at 87.) Plaintiff does not point to any evidence rebutting defendant's assertion that it had legitimate business reasons for retaining Ms. Stankiwicz or that his request for reinstatement was

considered in the context of collective bargaining between defendant and the union.[15]

Plaintiff also asserts that because the "threshold level" in defendant's alcohol and drug policy is not defined, and his first alcohol screening test resulted in a blood alcohol concentration level below that defined by the state of Maryland as being legally intoxicated, the use of the test as justification for his termination raises an inference of pretext. (ECF No. 53 at 11-12.) This argument is unpersuasive. That a company (particularly one in which employees operate dangerous heavy machinery) does not tolerate any level of intoxication for its employees in the workplace, even one below the legal definition of intoxication, is not remarkable, nor does it raise an inference that defendant's asserted reason for terminating plaintiff was a pretext for discrimination. Moreover, plaintiff signed a "last chance agreement" following his first failed test in which he acknowledged his violation of the drug and alcohol policy and accepted defendant's conditions of reinstatement, following which he again failed an alcohol screening test and was suspended with intent to discharge.

In short, plaintiff has not identified any facts sufficient to create a genuine dispute as to whether the legitimate reason offered by defendant for plaintiff's termination was a pretext for discrimination. See Reeves, 530 U.S. at 148 (2000).

Defendant's motion as to plaintiff's § 1981 claim will be granted. Because Maryland

---

[15] Contra Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 646-47 (4th Cir. 2002) (sufficient evidence of pretext for an award of summary judgment to plaintiff in discrimination action where female employee offered evidence of: employer's inconsistent post-hoc justifications for promotion of male comparator; employer's deviation from formal job requirements when conducting the promotion process; employer's denial of fair consideration to the other female applicant when she was the only candidate possessing all of the written job qualifications; and lack of superior skills of the male applicant awarded the promotion); Gordon v. Fort Mill Ford., Inc., 2009 WL 729501, at *10 (D.S.C. Mar. 23, 2009) (sufficient evidence of pretext for an award of summary judgment to plaintiff where employee presented evidence his sales team was outperforming the one headed by comparator employee who was not terminated as well as evidence of alleged history of racial harassment by decisionmaker responsible for termination).

courts generally look to federal court decisions to evaluate an employer's liability under Title 20,

for the same reasons, summary judgment will be granted as to plaintiff's surviving state law race

and age discrimination claims.

**IV. <u>CONCLUSION</u>**

For the foregoing reasons, defendant's motion for summary judgment (ECF No. 50) is

GRANTED. A separate Order shall issue.


September 30, 2011                                          _____/s/_____

Beth P. Gesner

United States Magistrate Judge